IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

JASON R. WHITE,

       Petitioner,

  v.                                                      Civil Action No.
                                     9:01-CV-0238 (GLS)(DEP)

HANS WALKER, Superintendent,

       Respondent.

_____

APPEARANCES:                                    OF COUNSEL:

FOR PETITIONER:

JASON R. WHITE, *pro se*
96-B-1280
Auburn Correctional Facility
135 State Street
Auburn, NY 13021

FOR RESPONDENT:

HON. ELIOT SPITZER                              SENTA B. SIUDA, Esq.
Office of the Attorney General                  Ass't Attorney General
State of New York
615 Erie Boulevard West
Suite 102
Syracuse, NY 13204-2455

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

<u>REPORT, RECOMMENDATION AND ORDER</u>

     Petitioner Jason R. White, a New York State prison inmate convicted

in 1996, of one count of murder in the second degree, based upon the

entry of a guilty plea seeks federal habeas relief pursuant to 28 U.S.C. §

2254.  In an amended petition filed in response to a court directive, White

asserts seven separate grounds in support of his request for federal

habeas intervention.  For the reasons set forth below, I recommend that

White's habeas petition, as amended, be denied.

I.      BACKGROUND

        A.      Factual Background

        In the early morning hours of October 20, 1995, Roy Vazques, a New

York State Trooper, learned through a Massena Village Police

transmission that shots had been fired near a home on East Orvis Street in

Massena, New York, and that petitioner Jason White, who was believed to

have been the individual who fired the shots, had fled the scene in a red

pickup truck.  *See* Transcript of Suppression Hearing (4/16/96)

("Suppression Tr.") at 3, 6-7.  At approximately 1:00 a.m. that same

morning, a white male carrying a shotgun and a box of shells entered the

State Police barracks.  Suppression Tr. at 8-9.  Upon admitting to Trooper

Vazques that he was White, the individual was placed under arrest.

Suppression Tr. at 9-11.

2

After being administered his *Miranda* warnings,[1] White provided the authorities with a statement regarding what had transpired at the time of the shooting.  Suppression Tr. at 45-46, 67-68.  In that statement, White recounted that between 5:30 p.m. and 6:00 p.m. on October 19, 1995, he had purchased a shotgun.  *See* People's Response to Defendant's Discovery Demand (1/17/96) at attached 5.  White then loaded the firearm with shells and eventually drove to the home of his ex-girlfriend, Amber Farris.  *Id.* at 5-6.  When White observed Gerald Castle, Farris's boyfriend, walking toward the residence, White exited his truck and began walking toward Castle.  *Id.* at 7.  Upon seeing White, Castle re-entered his automobile.  *Id.*  As Farris attempted to enter the passenger seat of Castle's car, White pushed her away and fired a shot through the passenger side window of the automobile, striking Castle.  *Id.* at 7-8.  After firing a second shot at the victim, White left the scene.[2]  *Id.* at 8.

II.   Procedural History

A.   State Court Proceedings

White was subsequently indicted by a St. Lawrence county grand jury

---

[1]    *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602 (1966).

[2]    Castle subsequently died of the gunshot wounds inflicted on him by White.

on December 11, 1995 and charged in that accusatory instrument with one count of second degree murder based upon the shooting incident.  *See* Indictment No. 95-172.  White thereafter appeared before St. Lawrence County Court Judge Eugene L. Nicandri with retained counsel, Peter B. Lekki, Esq., for arraignment on that charge, at which time a plea of not guilty was entered on his behalf.  *See* Arraignment in *People v. White* (12/15/95) ("Arraignment") at 5.

Following the petitioner's filing of an omnibus motion, through counsel, Judge Nicandri conducted a suppression hearing to determine whether White's statement to the authorities could be used against him at trial.  That hearing commenced on April 16, 1996, and was continued over to April 19, 1996.  On the date that hearing was to resume, White's counsel informed Judge Nicandri that his client wished to withdraw his request for continuation of the suppression hearing, and intended to enter a guilty plea to the second degree murder charge.  *See* Transcript of Change of Plea in *People v. White* (4/19/96) ("Plea Tr.") at 3-4.  Judge Nicandri proceeded to explain to White that by withdrawing his request to continue the suppression hearing, he was waiving his right to a decision concerning whether his statement to the authorities could be used against

4

him at trial.  Plea Tr. at 4-5.  White acknowledged that he understood he

was waiving his right to contest the admissibility of his statement, and then

indicated that he was prepared to plead guilty to the second degree murder

charge.  Plea Tr. at 5.  The following colloquy then occurred between

Judge Nicandri and White:

> The Court: Are you voluntarily and of your own free
> choice pleading guilty to murder in the
> second degree as charged in indictment
> 95-172?
>
> White: Yes, Your Honor.
>
> The Court: Any threats or promises made to get
> you to do that?
>
> White: No sir.
>
> The Court: Do you understand that if the Court
> accepts the plea, you would be giving
> up your right to a public jury trial, as well
> as other rights that you would have on a
> trial?
>
> White: Yes, I do.
>
> The Court: And you understand it would be the
> same as though you had been
> convicted of murder in the second
> degree by a jury after a public jury trial?
>
> White: I do, Your Honor.
>
> The Court: Now, under those circumstances, do

|  | you understand that it's mandatory that you be sentenced to an indeterminate term in a state correctional facility having a minimum of 15 years and a maximum of 25 years to life? |
|---|---|
| White: | Yes, Your Honor. |
| The Court: | Have any promises been made to you as to what the sentence by the court will be? |
| White: | No, sir. |
| The Court: | Have you had enough time to discuss the plea and the consequences of the plea with Mr. Lekki and members of your family before offering it to the Court? |
| White: | Yes, I have. |
| The Court: | Have you had anything of an intoxicating nature to drink or taken any medications or drugs within the last 24-hours? |
| White: | No.  I have not. |
| The Court: | Are you satisfied with the services of your lawyer? |
| White: | Yes, your honor, I am. |

Plea Tr. at 5-7.  White then admitted to having shot Castle with a shotgun

on October 19, 1995, intending to cause his death.  Plea Tr. at 7, 8.  Judge

6

Nicandri accepted the plea and remanded White to the custody of the

Sheriff's Department pending sentencing.  Plea Tr. at 8.

On June 10, 1996, White appeared before Judge Nicandri for

sentencing.  At that time, Judge Nicandri offered White the opportunity to

be heard before sentencing, an opportunity which White declined.  *See*

Transcript of Sentencing (6/10/96) ("Sentencing Tr.") at 8.  Judge Nicandri

then sentenced White principally to a term of twenty-three years to life

imprisonment.  Sentencing Tr. at 12-13.

### B.    Post-Conviction State Court Proceedings

On December 29, 1997, White's appellate counsel, Richard R.

Gardner, Esq., filed a brief in accordance with *Anders v. California*, 386

U.S. 738, 87 S.Ct. 1396 (1967) in which he 1) claimed that no non-frivolous

issues could be raised on appeal; and 2) moved to be relieved of his

assignment to prosecute the appeal.  *See* Dkt. No. 2, Ex. A.  White

thereafter filed a letter with the New York State Supreme Court, Appellate

Division, Third Department in which he argued that Judge Nicandri abused

his discretion in imposing the twenty-three year to life sentence.[3]  *See* Dkt.

---

[3]        In his letter, White requested additional time from the Appellate
Division in which to prepare a supplemental *pro se* appellate brief regarding his
claim that Judge Nicandri had abused his discretion in imposing the sentence.  *See*
Dkt. No. 2 at Ex. J.  It is unclear to me, however, whether that brief was ever filed,

No. 2 at Ex. J.

On March 31, 1998, before the Third Department issued a decision regarding White's appeal, White filed a *pro se* motion to vacate his judgment of conviction pursuant to N.Y. Criminal Procedural Law ("CPL") § 440.10 ("March, 1998 Article 440 Motion").  In that application, petitioner claimed that as a result of the "trickery, deceit and fraud" of his trial counsel, White had been misled into believing that if he pleaded guilty to the second degree murder charge, he would "receive a 15 year to life sentence instead of the maximum sentence of 25 year [*sic*] to life."  *See* March, 1998 Article 440 Motion at ¶¶ 16-19.  Petitioner's section 440.10 motion asserted that he was informed by Attorney Lekki that if White mentioned the agreement regarding the length of his sentence during his plea colloquy, he would be forced to proceed to trial on the charge.  *Id.* at ¶¶ 23-24.  White concluded that application by arguing that because his plea was not knowingly and intelligently made, his guilty plea should be vacated.  *Id.* at ¶¶ 33-37.

On May 5, 1998, Judge Nicandri issued an order relating to White's

---

since I was not provided with a copy of any such memorandum, and the Third Department's decision affirming White's conviction does not refer to any supplemental *pro se* appellate brief.  *See People v. White*, 253 A.D.2d 946, 946-47, 678 N.Y.S.2d 915, 915-16 (3d Dept. 1998).

March, 1998 Article 440 motion.  In his order, Judge Nicandri noted that

before the April 19, 1998 proceeding commenced, an "off-the-record

conference was held" between the court and counsel regarding a potential

guilty plea.  *See People v. White*, Nos. 95-172, 13638 (St. Lawrence Cty.

Ct. May 5, 1998) ("May, 1998 Order") at (unnumbered) p. 2.  Specifically,

Judge Nicandri found that his notes taken on the day the suppression

hearing was to resume reflected that on that day, the court had "indicated

to counsel that, 'if [White] plead [*sic*] guilty, the court would credit

defendant for the voluntary plea,'" and not impose the maximum prison

term of twenty-five years to life.  *See* May, 1998 Order at (unnumbered) p.

2.  In light of Judge Nicandri's notes, as well as affidavits provided by

White in support of his March, 1998 Article 440 motion, Judge Nicandri

scheduled an evidentiary hearing to determine whether White's plea was

properly accepted.

At the outset of that hearing, which was held on June 4, 1998, Judge

Nicandri denied a motion by White seeking 1) to disqualify the District

Attorney's office; 2) the appointment of a special prosecutor; and 3) the

recusal of Judge Nicandri.  *See* Transcript of Evidentiary Hearing (6/4/98)

("Evidentiary Tr.") at 7-8.  As that hearing progressed, Attorney Lekki

testified that he had advised White that if he pleaded guilty to the murder charge, he could be sentenced to a term of imprisonment of between fifteen and twenty-four years to life. *See* Evidentiary Tr. at 19. Attorney Lekki squarely denied having represented to White that Judge Nicandri had "promise[d]" to sentence White to a specific term of imprisonment, and instead testified that he had informed White that it was the "rare case where [Judge Nicandri] made a specific promise ... as to what a sentence would be." Evidentiary Tr. at 20.

In her testimony at that hearing White's sister, Denise Hillenbrand, stated that in discussing the sentencing options available to Judge Nicandri if White pleaded guilty, Attorney Lekki had "mentioned that ... there was a chance that [White] could get ... a smaller amount, 15 to life or 25 [*sic*] instead of going to trial." Evidentiary Tr. at 32. White also testified at that hearing, and claimed that he was advised by Attorney Lekki that Judge Nicandri would sentence him to a term of imprisonment of fifteen years to life if he pleaded guilty to the murder charge. Evidentiary Tr. at 39. White further testified that his attorney had advised him not to mention the promise of the lower sentence when Judge Nicandri inquired as to whether he had been promised anything in exchange for his plea. Evidentiary Tr. at

40.

At the conclusion of that hearing, Judge Nicandri gave "full credence"

to Attorney Lekki's testimony, and "very little credence" to White's

testimony.  Evidentiary Tr. at 44.  Accordingly, based upon the evidence

before him, Judge Nicandri determined that White's plea had been

knowingly and intelligently made, and denied his March, 1998 Article 440

motion.[4]  Evidentiary Tr. at 44-45.  Attorney Gardner sought leave to

appeal the decision denying White's motion to vacate by application dated

December 14, 1998.  *See* Dkt. No. 15.  That application, however, was

denied by the Appellate Division in its order dated February 23, 1999.  *See*

Dkt. No. 22.

On September 17, 1998, the Appellate Division, Third Department,

issued a decision affirming petitioner's conviction.  *See People v. White*,

253 A.D.2d 946, 947, 678 N.Y.S.2d 915, 916 (3d Dept. 1998).  In affirming

the conviction and sentence, the Third Department concluded that 1) no

nonfrivolous issues could be raised by appellate counsel on appeal, and 2)

White had "entered a knowing, voluntary and intelligent plea of guilty of the

---

[4]        Judge Nicandri subsequently issued a written decision memorializing
his bench decision denying White's March, 1998 Article 440 motion.  *See People v.
White*, Nos. 95-172, 13638 (St. Lawrence Cty. Ct. Dec. 10, 1998) ("December,
1998 Decision").

crime of murder in the second degree." *White*, 253 A.D.2d at 946-47, 678

N.Y.S.2d at 915-16.  White did not seek leave to appeal that decision to

New York's Court of Appeals.  *See* Amended Petition (Dkt. No. 4) at

(attached) 3a.

On March 8, 1999, White filed his second Section 440.10 motion

("March, 1999 Article 440 Motion").  In that application, White reiterated the

claims raised in his initial Article 440 motion, and additionally indicated that

in his May, 1998 Order, Judge Nicandri noted that he had represented to

Attorney Lekki that if White pleaded guilty to the charge, the court would

not sentence White to the maximum prison term authorized for a second

degree murder conviction.  *See* March, 1999 Article 440 Motion at ¶ 26.

White argued that Judge Nicandri's admission, to the effect that he had

informed Attorney Lekki that White would not receive the maximum

sentence if he entered a guilty plea, demonstrated that Attorney Lekki, the

prosecution and Judge Nicandri were all aware that White's statement at

his plea that no promises had been made to induce him to plead guilty was

false.  *See* March, 1999 Article 440 Motion at ¶¶ 27-31.  Judge Nicandri

denied White's March, 1999 Article 440 motion pursuant to CPL §

440.10(3)(b), (c), finding that 1) White had already raised the issues

asserted in his March, 1999 Article 440 motion in his March, 1998 Article

440 motion seeking the same relief; and 2) if White's allegations of judicial

and prosecutorial misconduct could not be viewed as having been asserted

in White's prior application, White "could easily" have raised those claims

in his March, 1998 Article 440 motion.  *See People v. White*, Nos. 95-172,

13638 (St. Lawrence Cty. Ct. Apr. 1, 1999) ("April, 1999 Decision") at

(unnumbered) p. 2.  White's application for leave to appeal Judge

Nicandri's decision dated April 26, 1999, *see* Dkt. No. 16, was denied on

July 1, 1999 by the Third Department.  *See* Dkt. No. 23.

On December 16, 1999, White filed a motion to set aside his

sentence pursuant to CPL § 440.20, claiming in that request that he was

denied his right to a "fair and impartial sentencing hearing due to the

sentencing judge's inability to be objective" regarding White's sentence.

*See* Motion to Set Aside Sentence Pursuant to CPL § 440.20 (12/16/99)

("Article 440.20 Motion").  Judge Nicandri denied that post-conviction

motion by order dated February 3, 2000.  *See* Dkt. No. 17.  White's

application dated February 29, 2000, for leave to appeal that decision, *see*

Dkt. No. 18, was denied by the Third Department by order dated April 20,

2000.  *See* Dkt. No. 24.

On March 15, 2000, White filed a third motion to vacate his judgment
of conviction pursuant to CPL § 440.10.  In that application, White
reiterated the claims raised in his prior CPL § 440.10 motions, and further
claimed that Judge Nicandri's failure to conduct a competency hearing
before accepting his guilty plea was the product of ineffective assistance of
counsel, prosecutorial misconduct and judicial misconduct.  *See* CPL §
440 Motion (3/15/00) ("March, 2000 Article 440 Motion") at ¶¶ 21-34.
Relying on CPL § 440.10(3)(b), (c), Judge Nicandri denied that application
on April 18, 2000.[5]  *See People v. White*, Nos. 95-172, 13638 (St.
Lawrence Cty. Ct. Apr. 18, 2000) ("April, 2000 Decision") at 1.  On May 3,
2000, White sought leave to appeal Judge Nicandri's April, 2000 decision
to the Third Department.  *See* Dkt. No. 19.  That application was denied by
the Appellate Division by order dated July 6, 2000.[6]  *See* Dkt. No. 26.

White filed his fourth and final Article 440.10 motion on September
13, 2000.  In that application, White argued that Judge Nicandri's decision

---

[5]     Under those provisions, a county court may deny a motion to vacate a
judgment when either the ground or issue raised on the post conviction motion was
decided on a prior motion, or where the party could have raised the issue in a
previously filed CPL § 440.10 motion but failed to do so.  *See* CPL § 440.10(3)(b),
(c), respectively.

[6]     The Third Department also denied White's subsequent motion for re-
argument and reconsideration of the denial of his May 3, 2000 leave application.
*See* Dkt. No. 25.

denying his March, 1998 Article 440 motion should have been vacated because Judge Nicandri wrongfully failed to recuse himself from the June, 1998 evidentiary hearing.  *See* CPL § 440.10 Motion (9/13/00) at ¶¶ 18-27. Judge Nicandri denied that application pursuant to CPL § 440.10(2)(a), (c). *See* Dkt. No. 20.  By request dated November 2, 2000, White sought leave to appeal the County Court's decision to the Appellate Division.  *See* Dkt. No. 21.  The Third Department, however, denied that application in its order issued on January 17, 2001.  *See* Dkt. No. 27.

On November 6, 2000, White filed an application for a writ of error *coram nobis.*  That application was denied by the Appellate Division in an order dated January 19, 2001.[7]  *See* Dkt. No. 2, Ex. B.

C.   This Proceeding

White commenced this proceeding by the filing of his initial habeas petition on February 16, 2001.  Petition (Dkt. No. 1) at 1.  At the time of commencement petitioner also filed a substantial legal memorandum in

---

[7]     Although a party may now seek leave to appeal the Appellate Division's denial of a *coram nobis* application from the Court of Appeals, *see* 2002 N.Y. Laws ch. 498, § 1, that provision modifying New York's Criminal Procedure Law was not effective until November 1, 2002.  *See Brooks v. Donnelly*, 02-CV-5883, 2003 WL 23199559, at *1 (E.D.N.Y. Dec. 8, 2003).

support of his application for habeas relief.[8]  *See* Dkt. No. 2 ("Supporting Mem.").

Following routine review of the petition, the then-assigned District Judge, the Hon. Lawrence E. Kahn, directed White to file an amended petition in this matter setting forth more detail to allow examination of whether the petition was timely filed, and whether White had fully exhausted his state remedies before seeking federal habeas relief.  *See* Dkt. No. 3.  In response, an amended petition was thereafter filed by White on April 11, 2001.  *See* Dkt. No. 4.  In his amended petition, White claims that 1) his appellate counsel rendered ineffective assistance because he failed to file a merits brief; 2) his trial counsel rendered ineffective assistance by misleading White as to the length of the sentence he would receive following a guilty plea, and instructing him to make false representations to Judge Nicandri during the plea allocution; 3) his guilty plea was invalid; 4) the prosecution engaged in misconduct at the time of White's plea allocution; 5) he was denied due process because of judicial misconduct at the time of the plea; 6) Judge Nicandri lacked "the

_____

[8]      White's supporting memorandum consists of over one hundred handwritten pages.  *See* Dkt. No. 2.  While the memorandum is substantially in excess of this court's twenty-five page maximum length, *see* N.D.N.Y.L.R. 7.1(a)(1), in view of White's *pro se* status, the court has accepted and authorized its filing.

necessary objectivity when considering the circumstances" relating to White's case; and 7) Judge Nicandri's failure to conduct a competency hearing was the result of ineffective assistance of counsel, as well as prosecutorial and judicial misconduct, and deprived White of due process of law.  *See* Amended Petition (Dkt. No. 4) at Grounds One through Seven.

The Attorney General for the State of New York, acting on respondent's behalf, has responded to White's amended petition by filing an answer and a memorandum of law in opposition to that application. *See* Dkt. Nos. 11, 12.  In his response, respondent argues that all of the claims raised in the amended petition are without merit.  *See* Respondent's Memorandum (Dkt. No. 12) at 9-22.  Petitioner thereafter filed a "traverse" in further support of his amended petition.  *See* Dkt. No. 13.

This matter, which is now ripe for determination, has been referred to me for the issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c).  *See also* Fed. R. Civ. P. 72(b).

III.   <u>DISCUSSION</u>

    A.   <u>Standard of Review</u>

Under the Antiterrorism and Effective Death Penalty Act of 1996,

Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), a federal court

may not grant habeas relief to a state prisoner on a claim

> that was adjudicated on the merits in State court proceedings
> unless the adjudication of the claim –
>
>> 1) resulted in a decision that was contrary to, or
>> involved an unreasonable application, of, clearly
>> established Federal law, as determined by the
>> Supreme Court of the United States; or
>>
>> 2) resulted in a decision that was based on a
>> unreasonable determination of the facts in light of
>> the evidence presented in the State court
>> proceeding.

28 U.S.C. § 2254(d); *see also Miranda v. Bennett*, 322 F.3d 171, 177-78

(2d Cir. 2003); *Boyette v. LeFevre*, 246 F.3d 76, 88 (2d Cir. 2001).  The

AEDPA also requires that in any such proceeding "a determination of a

factual issue made by a State court shall be presumed to be correct [and

t]he applicant shall have the burden of rebutting the presumption of

correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1);

*see also Boyette*, 246 F.3d at 88 (quoting § 2254(e)(1)) (internal quotations

omitted).

The Second Circuit has provided additional guidance concerning

application of this test, noting that

> [u]nder AEDPA, we ask three questions to

> determine whether a federal court may grant
> habeas relief: 1) Was the principle of Supreme
> Court case law relied upon in the habeas petition
> "clearly established" when the state court ruled? 2)
> If so, was the state court's decision "contrary to"
> that established Supreme Court precedent? 3) If
> not, did the state court's decision constitute an
> "unreasonable application" of that principle?

*Williams v. Artuz*, 237 F.3d 147, 152 (2d Cir. 2001) (citing *Williams and*

*Francis S. v. Stone*, 221 F.3d 100, 108-09 (2d Cir. 2000)).

> B.    Review of White's Claims

> 1.    Ground One

In his first ground, White argues that his appellate counsel rendered

ineffective assistance by failing to withdraw his *Anders* brief.  Specifically,

White contends that after that brief was filed, Attorney Gardner

represented White at the June, 1998 evidentiary hearing relating to White's

March, 1998 Article 440 motion.  *See* Supporting Mem. (Dkt. No. 2) at 16.

Petitioner argues that following that hearing, Attorney Gardner was aware

that promises had been made to him regarding the sentence he would

receive if he pleaded guilty to the charge, and that counsel's failure to

withdraw the *Anders* brief and submit an appellate brief bringing that issue

to the Third Department's attention, as well as asserting a claim that the

sentence imposed on White was harsh and excessive, deprived him of

constitutionally required effective assistance of counsel.[9]  Supporting Mem.

(Dkt. No. 2) at 16-20.

        i.    Clearly Established Supreme Court Precedent

        The Sixth Amendment provides that "[i]n all criminal prosecutions,

the accused shall enjoy the right ... to have the Assistance of Counsel for

his defence."  U.S. Const., Amend. VI.  In accordance with this

constitutional mandate, states must provide indigents with counsel for their

first appeal as of right.  *Douglas v. California*, 372 U.S. 353, 358, 83 S.Ct.

814, 817 (1963).  This right to counsel mandates the effective assistance

of appellate counsel.  *McMann v. Richardson*, 397 U.S. 759, 771 n. 14, 90

S.Ct. 1441, 1449 n.14 (1970).

        The proper standard for evaluating a claim that appellate counsel

was ineffective in failing to file a merits brief is the test enunciated in

*Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984).  *See*

*Smith v. Robbins*, 528 U.S. 259, 287-89, 120 S.Ct. 746, 765-66 (2000).  In

*Strickland*, the Supreme Court held that to establish ineffective assistance,

a party must demonstrate 1) that counsel's representation fell below an

---

        [9]       Attorney Gardner was appointed to represent White both for his direct
appeal of the conviction and in connection with the June, 1998 evidentiary hearing.
*See* Affidavit of Richard R. Gardner, Esq. (5/26/98) at ¶ 3.

objective standard of reasonableness measured by the prevailing

professional norms; and 2) prejudice – that is, a reasonable probability

that, but for counsel's unprofessional performance, the outcome of the

proceeding would have been different.  *See Bell v. Cone*, 535 U.S. 685,

695, 122 S.Ct. 1843, 1850 (2002) (citing *Strickland*).

Since the *Strickland* standard is clearly established Federal law, as

determined by the Supreme Court of the United States, *see Cone*, 535

U.S. at 693-94, 122 S.Ct. at 1849-50, I must determine whether the finding

of the Third Department which denied White's *coram nobis* application on

the merits (Dkt. No. 2, Ex. B) is contrary to, or an unreasonable application

of, *Strickland* and its progeny.[10]

    ii.   <u>Contrary To, or Unreasonable Application of, Supreme
Court Precedent</u>

Judge Nicandri has acknowledged indicating to Attorney Lekki that

the court would not impose the maximum term of twenty-five years to life

---

[10]    Although the Third Department denied White's application for a writ of *coram nobis* without referring explicitly to the Sixth Amendment or relevant federal case law, the Third Department indicated that White's "ineffective assistance of appellate counsel claim" was "denied."  *See* January 19, 2001 Decision and Order at 1.  Since there is no basis for believing that the Appellate Division rejected the claim on non-substantive grounds, the adjudication is properly deemed to have been "on the merits," and therefore such decision should be reviewed under the deferential standards prescribed in 28 U.S.C. § 2254(d)(1).  *See Sellan v. Kuhlman*, 261 F.3d 303, 314 (2d Cir. 2001).

imprisonment on White if he pleaded guilty to the murder charge.  *See*

May, 1998 Order at (unnumbered) p. 2.  Judge Nicandri according found it

appropriate to direct that an evidentiary hearing be conducted "to explore

what if any promises were made, to induce the guilty plea."  *Id.*  At that

evidentiary hearing, Attorney Lekki testified that he informed White that he

could be sentenced to "anywhere from 15 to 24" years to life imprisonment

if he pleaded guilty, and that "he should be prepared for the worst" at the

time of sentencing.  Evidentiary Tr. at 19.  Attorney Lekki specifically

denied having informed White that Judge Nicandri had promised imposing

a specific sentence on petitioner.  Evidentiary Tr. at 19-20.  White's sister,

Hillenbrand, buttressed Attorney Lekki's testimony by conceding at that

hearing that Attorney Lekki did not make any promise as to the sentence

White would receive if he pleaded guilty.  *See* Evidentiary Tr. at 32.  The

sole piece of contrary evidence offered to support White's claim that he

was assured that he would receive the lowest possible sentence for his

crime was his own testimony (*see* Evidentiary Tr. at 39) – testimony which

Judge Nicandri specifically found to be worthy of "very little credence."

Evidentiary Tr. at 44.

As to White's claim that his appellate counsel rendered ineffective

assistance in failing to argue that the sentence imposed was unduly harsh

and severe, I note that at sentencing, Judge Nicandri provided some

insight regarding the reasons behind his sentencing White to the twenty-

three years to life imprisonment term.  Judge Nicandri noted that his

sentence was based in part upon his review of the probation department's

pre-sentence report, including victim statements which discussed the

impact of Castle's murder on his eight year old son.[11]  *See* Sentencing Tr.

at 9.

      New York appellate courts are authorized to reduce sentences

which, although legal, are "unduly harsh or severe."  *See* CPL §

470.15[6][b].  That power, however, is typically exercised "only in

extraordinary circumstances or where the trial court abused its discretion."

*People v. Longo*, 182 A.D.2d 1019, 1022, 582 N.Y.S.2d 832, 835 (3d

Dept.), *leave denied*, 80 N.Y.2d 906, 588 N.Y.S.2d 831 (1992).  White has

not demonstrated that Judge Nicandri either abused his discretion in

imposing the sentence on White, or that extraordinary circumstances

existed sufficient to justify an appellate claim that White's sentence was

---

      [11]      Castle's son had previously been diagnosed with attention deficit
disorder which was "exacerbated by the events of this indictment."  Sentencing Tr.
at 9.

unduly harsh or severe.

In light of the foregoing, I conclude that White has not demonstrated that his appellate counsel acted in an objectively unreasonable manner in failing to argue on appeal either that 1) White had been promised a sentence of fifteen years to life in exchange for his guilty plea or 2) the sentence imposed was unduly harsh and severe.  Nor has White established any resulting prejudice – that is, a reasonable probability that, but for his counsel's failure to file a merits brief, White would have prevailed on either of these theories in his appeal.[12]  Accordingly, White has failed to demonstrate that the Third Department's decision denying his *coram nobis* application is either contrary to, or represents an unreasonable application of, *Strickland* and its progeny.  I therefore recommend that this first ground in the amended petition be denied.  *E.g. Perez v. Greiner*, No. 01 CIV. 7140, 2003 WL 21203351, at *4 (S.D.N.Y. May 21, 2003) (denying habeas claim alleging ineffective assistance of appellate counsel; court found "no grounds to second-guess the appellate counsel's failure to find merit in ... issue [raised by petitioner] or the

---

[12]     Both of these issues, which White apparently raised in his *coram nobis* application, were found to be without merit by the Third Department.  *See* Dkt. No. 2 at Ex. B.

Appellate Division's acceptance of [appellate counsel's] *Anders* brief").

      2.   Ground Two

White's second ground alleges that his guilty plea was not knowingly and voluntarily made.  Embedded within this claim is White's argument that his trial attorney rendered ineffective assistance with respect to his decision to plead guilty to the murder charge.  Specifically, petitioner alleges that Attorney Lekki 1) "misled petitioner and his family about a 15 year promise;" 2) "instructed petitioner to answer 'no' when asked by the court if promises induced [the] guilty plea;" 3) failed to "correct" White's untruthful responses to Judge Nicandri's questions during the plea allocution; and 4) failed to place the promise regarding the agreed upon term of imprisonment on the record.  *See* Amended Petition (Dkt. No. 4) at Ground Two.  Because this ground potentially implicates two distinct constitutional claims, I will separately address these two components

      A.   Validity of Plea

          i.   Clearly Established Supreme Court Precedent

"The longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Hill v. Lockhart*, 474

U.S. 52, 56, 106 S.Ct. 366, 369 (1985) (quoting *North Carolina v. Alford*,

400 U.S. 25, 31, 91 S.Ct. 160, 164 (1970)); *see also Boykin v. Alabama*,

395 U.S. 238, 242-43, 89 S.Ct. 1709, 1712 (1969) (United States

Constitution requires that guilty plea be knowingly and voluntarily entered);

*Parke v. Raley*, 506 U.S. 20, 29, 113 S.Ct. 517, 522 (1992) (plea is valid

when it is both knowingly and voluntarily made).

      ii.    <u>Contrary To, or Unreasonable Application of, Supreme
Court Precedent</u>

     To date, the Second Circuit does not appear to have explicitly noted,

in a published decision, the degree of deference federal district courts

must afford a state court finding upholding the validity of a defendant's

guilty plea.  The Second Circuit has held that federal courts must defer to

state court rulings on the issue of whether a criminal defendant's request to

withdraw a guilty plea was properly denied by the trial court.  *See Hines v.

Miller*, 318 F.3d 157, 161-62 (2d Cir.  2003).  The only case, however, in

which that court specifically afforded deference to a state court's

determination concerning whether a defendant's guilty plea had been

knowingly and intelligently made was in a case which it specifically

declined to publish in an official reporter, thereby under its own rules

preventing courts from citing that case "as precedential authority to [the

Second Circuit] or any other court."  *See Joyner v. Vacco*, No. 00-2200, 23 Fed.Appx. 25, 2001 WL 1168326, at *1, 3 (2d Cir. Sept. 21, 2001).

This notwithstanding, I am cognizant of the Second Circuit's pronouncement in *Cruz v. Miller*, 255 F.3d 77 (2d Cir. 2001) that, subsequent to the enactment of the AEDPA, federal courts that are confronted with issues that contain mixed questions of law and fact are "to determine whether the state courts, in ruling [on the constitutional issue] unreasonably appli[ed] Supreme Court law."  *Cruz*, 255 F.3d at 80 & n.2 (internal quotation and citation omitted).  Since the determination regarding the validity of a guilty plea involves questions of both law and fact, *see Ventura v. Meachum*, 957 F.2d 1048, 1055 (2d Cir. 1992)[13] (citing *Marshall v. Lonberger*, 459 U.S. 422, 431-32, 103 S.Ct. 843, 849-50 (1983)) (other citation omitted); *see also United States v. Morrison*, 171 F.3d 567, 568 (8th Cir. 1999) (citation omitted), I conclude that this court, engaged in federal habeas review of petitioner's conviction, must afford AEDPA deference to Judge Nicandri's finding that White's plea was knowingly and

---

[13]   In *Ventura*, the Second Circuit held that the pre-AEDPA version of 28 U.S.C. § 2254 did *not* permit federal courts to afford deference to state court findings on mixed issues of fact and law, including determinations as to whether a plea agreement was entered into voluntarily.  *Ventura*, 957 F.2d at 1055 (citations omitted).

intelligently made.[14]  *See*, *e.g.*, *Hanson v. Debois*, No. 03 CIV. 5671, 2004 WL 540267, at *9 (S.D.N.Y. Feb. 13, 2004) (applying post-AEDPA standard of review "to the Appellate Term's finding that the plea colloquy was constitutionally compliant"); *Black v. Herbert*, No. 02 CIV.6252, 2003 WL 21983807, at *6 (S.D.N.Y. Aug. 19, 2003) ("'A state court's determination of the voluntariness of a defendant's guilty plea is a factual issue that is entitled to a presumption of correctness on habeas review'") (quoting *Murray v. McGinnis*, No. 00 Civ. 3510, 2001 WL 26213, at *4 (S.D.N.Y. Jan.10, 2001)) (citing *Demosthenes v. Baal*, 495 U.S. 731, 735, 110 S.Ct. 2223, 2225 (1990));[15] *but see Carter v. Brooks*, 2001 WL

_____

[14]     White's amended petition challenging the validity of the guilty plea is based upon the evidence adduced at the evidentiary hearing, *see* Amended Petition (Dkt. No. 4) at Ground Two, and therefore does not appear to challenge the Third Department's determination, made in the context of White's direct appeal, that his plea was knowingly, voluntarily and intelligently made.  *See White*, 253 A.D.2d 946, 946-47, 678 N.Y.S.2d 915, 915-16.  In any event, since petitioner did not appeal the Third Department's finding regarding the validity of the plea to New York's Court of Appeals, *see* Amended Petition (Dkt. No. 4) at (attached) 3a, any challenge to the propriety of the Appellate Division's finding would face the significant procedural hurdle faced by all federal claims that are not first exhausted in the state courts.  *See Aparicio v. Artuz*, 269 F.3d 78, 89 (2d Cir. 2001) (quoting 28 U.S.C. § 2254(b)(1)).

[15]     *See also*, *Penick v. Filion*, 144 F.Supp.2d 145, 153 (E.D.N.Y. 2001) (deferential standard of review applies to determinations of state court involving mixed questions of fact and law); *Glover v. Portuondo*, No. 96 CIV. 7616, 1999 WL 349936, at *4 (S.D.N.Y. May 28, 1999) (citing 28 U.S.C. § 2254(d)(1)); *Rodriguez v. Bennett*, No. 98 Civ. 580, 1998 WL 765180, at *3 (S.D.N.Y. Nov. 2, 1998) (holding that "subsection (d)(1) of § 2254 defines the standard of review to be applied to questions of law and mixed questions of law and fact"); *Ramirez v. Senkowski*, 7 F.Supp.2d 180, 191 (E.D.N.Y. 1998).

169584, at *2 (D.Conn. Feb. 13, 2001) (ultimate question of "[w]hether a plea of guilty is voluntary for purposes of the Federal Constitution is a question of federal law[,] and not a question of fact" that is entitled to a presumption of validity as determined by prior state proceedings).

At the June, 1998 evidentiary hearing, Attorney Lekki conceded that, with the exception of Judge Nicandri's indication to counsel that White would not receive the maximum term of imprisonment of twenty-five years to life, he counseled White to represent to the trial court that no promises had been made to induce him to plead guilty.  *See* Evidentiary Tr. at 28. Attorney Lekki testified, however, that he did not promise White that he would receive the minimum term of imprisonment, and instead testified that he had indicated to White that Attorney Lekki had "hoped" the sentence "would be better" than a twenty-four year to life term.  Evidentiary Tr. at 27, 29.  After hearing the testimony offered at that hearing, Judge Nicandri found that the credible evidence established that

> at the time the defendant under oath made his plea
> [allocution], it was a knowing and intelligent plea
> and [although] this court will never know for certain
> what Mr. Lekki and Mr. White talked about, ... the
> court is satisfied that no prosecutor, no judge, no
> police officer, no probation officer made any
> representation to the defendant about a guaranteed
> sentence of 15-years to life .... The ultimate

> sentence that was imposed is, as was indicated, not
> the maximum minimum, and, in fact, the defendant
> received credit for a voluntary plea.

Evidentiary Tr. at 44-45; *see also* December, 1998 Decision at 1.

"The standard for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Urena v. People of the State of New York*, 160 F.Supp.2d 606, 610 (S.D.N.Y.2001) (quoting *Ventura*, 957 F.2d at 1058). "A plea is 'intelligent' and 'voluntary' when a defendant had the advice of counsel, understood the consequences of his plea and the plea was not physically or mentally coerced." *Heron v. People*, 98 Civ. 7941, 1999 WL 1125059, at *5 (S.D.N.Y. Dec. 8, 1999); *see also*, *Foreman v. Garvin*, 2000 WL 631397, at *10.[16]  Moreover, "there is a strong presumption that defense counsel's conduct fell within the broad spectrum of reasonable professional assistance, and a petitioner bears the burden of proving that counsel's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy.

---

[16]      As now-Circuit Judge Pooler previously observed while a judge of this court, "[t]he mere fact that a defendant pleaded guilty solely to limit his possible penalty does not make that plea involuntary." *Phan v. McCoy*, No. 94-CV-1596, 1997 WL 570690 at *6 (N.D.N.Y. Aug. 28, 1997) (Pooler, D.J.); *see also France v. Strack*, No. 99-CV-2510, 2001 WL 135744, at *3 (E.D.N.Y. Jan. 30, 2001).

*Jackson v. Moscicki*, 2000 WL 511642, at \*7 (S.D.N.Y. Apr. 27, 2000) (internal quotation and citations omitted).

Based upon my review of the state court record and documents submitted in support of the present application for habeas relief, I conclude that White has failed to establish that the state court's findings that White's plea was knowingly and voluntarily made (*see* December, 1998 Decision *see also* Evidentiary Tr. at 44-45) is contrary to, or represents an unreasonable application of, *Lockhart*.  I therefore recommend that this aspect of petitioner's second ground for relief be denied.

      B.    <u>Ineffective Assistance</u>

           i.    <u>Clearly Established Supreme Court Precedent</u>

As noted above, the Supreme Court held in *Strickland* that to establish ineffective assistance, a party must demonstrate both 1) that counsel's representation fell below an objective standard of reasonableness; and 2) prejudice.  *See Bell*, 535 U.S. at 695, 122 S.Ct. at 1850 (citing *Strickland*).  Ineffective assistance claims arising out of guilty pleas are governed by the standards enunciated in *Strickland*.  *See Lockhart*, 474 U.S. at 58, 106 S.Ct. at 370.

           ii.    <u>Contrary To, or Unreasonable Application of, Supreme Court Precedent</u>

White's argument that he received ineffective assistance of counsel is based upon two distinct theories; he argues that 1) Attorney Lekki failed to advise Judge Nicandri, and place on the record at the time of the plea, that he was pleading guilty because of the alleged agreement that he would only be sentenced to a term of imprisonment of fifteen years to life; and 2) his trial counsel wrongfully instructed White to represent to Judge Nicandri that no promises had been made to induce him to plead guilty to the crime.  *See* Amended Petition (Dkt. No. 4) at Ground Two.

In support of his claim regarding the purported agreement regarding the length of the sentence he was to receive upon pleading guilty, petitioner has provided the court with affidavits from Hillenbrand (White's sister), as well as White's brothers, Corey and Dale.  *See* Dkt. No. 2 at Exs. G, H and I.  Those affidavits, which were also submitted in support of White's March, 1998 Article 440 motion, indicate that Attorney Lekki had assured White and members of his family that he would not be sentenced to a term of imprisonment of more than fifteen years to life entered a plea of guilty to the murder charge.  *See* Dkt. No. 2, Ex. G at ¶¶ 9,10; Ex. H at ¶¶ 8-9, 11; and Ex. I at ¶¶ 9, 11, 15-16.

It was based in part upon these same affidavits that Judge Nicandri

scheduled the evidentiary hearing which was held to address factual issues associated with White's March, 1998 Article 440 motion.  *See* May, 1998 Order at (unnumbered) 1-3.  At that hearing, Attorney Gardner elected not to call White's brothers to testify, instead choosing to call Hillenbrand to testify on White's behalf.  Hillenbrand's testimony at that hearing, however, differed significantly from statements contained within her affidavit. Specifically, in her affidavit in support of White's March, 1998 post-conviction motion, Hillenbrand declared that Attorney Lekki had informed White and other members of his family that, by pleading guilty, White "*would* receive the much lower minimum sentence of 15 years to life instead of the maximum sentence."  *See* Dkt. No. 2, Ex. G at ¶ 9 (emphasis added); *see also id.* at ¶¶ 11, 15.  In sharp contrast to that sworn statement, Hillenbrand testified at the evidentiary hearing that Attorney Lekki did not "come right out and say" that White would be sentenced to the fifteen year to life term, but had only "mentioned that ... there was a chance that [White] could get ... a smaller amount, 15 to life" if he chose to plead guilty.  *See* Evidentiary Tr. at 32.

As can be seen, Hillenbrand's testimony at the evidentiary hearing failed to support White's claim that he had been promised a sentence of

fifteen years to life in exchange for a guilty plea.[17]  As was previously

noted, the only evidence adduced at the evidentiary hearing supportive of

White's claim regarding the fifteen year to life sentence was his own

testimony, which Judge Nicandri rejected as worthy of "very little

credence."  Evidentiary Tr. at 44.  Accordingly, I find that petitioner has not

demonstrated that Attorney Lekki rendered ineffective assistance in failing

to note on the record at the time of White's plea the alleged agreement

limiting White's sentence to the statutory minimum required for a second

degree murder conviction.

I also find that petitioner has not established that he was prejudiced

by any promises made to induce him to plead guilty.  The only "promise"

for which there is record support in this context relates to Judge Nicandri's

indication that he would not sentence petitioner to the maximum term of

twenty five years to life imprisonment in the event he pleaded guilty.  *See*

Evidentiary Tr. at 19; *see also* May, 1998 Decision at 2.  Since White was

in fact sentenced to less than the maximum term of imprisonment

authorized for his second degree murder conviction, even assuming that

---

[17]      Judge Nicandri noted that Hillenbrand's testimony at the evidentiary
hearing differed from her affidavit testimony and "comport[ed] with what the
discussions were between Mr. Lekki, the District Attorney and the Court."
Evidentiary Tr. at 44.

Attorney Lekki was constitutionally required to clarify the record during the plea allocution regarding Judge Nicandri's intention not to sentence White to the maximum term of imprisonment, it is apparent that White was not prejudiced by his counsel's failure to note that fact at that time.[18]  This failure to demonstrate any prejudice – the second prong required under the *Strickland* test – proves fatal to White's ineffectiveness claim.  *See Pavel v. Hollins*, 261 F.3d 210, 216 (2d Cir. 2001) (petitioner "must satisfy *both* prongs of the two-part test articulated in *Strickland*") (emphasis added); *see also Price v. Senkowski*, No. 93-CV-1181, 1996 WL 631731, at *3 (N.D.N.Y. Oct. 21, 1996) (Scullin, J.).

In sum, based upon my review of the state court record, including the transcripts of White's guilty plea, his sentencing, and the evidentiary hearing conducted by Judge Nicandri, I conclude that petitioner has failed to establish that Judge Nicandri's denial of petitioner's ineffective assistance of trial counsel claim is either contrary to, or an unreasonable application of, *Strickland* or *Lockhart*.  I therefore recommend that this aspect of White's second ground for relief be denied.

---

[18]    In New York, the maximum sentence for a conviction of second degree murder is twenty-five years to life imprisonment.  *See* N.Y. Penal L. § 70.00(2)(a), 3(a)(i); *see also Petrovich v. Leonardo*, 229 F.3d 384, 385 n.1 (2d Cir. 2000) (citations omitted), *cert. denied*, 532 U.S. 981, 121 S.Ct. 1623 (2001).

3.     Ground Three

In his third ground, White argues, as he did in his March, 1998 Article 440 motion, that his guilty plea was invalid because at the colloquy held at the time of its entry, Judge Nicandri did not establish that White was aware that, by pleading guilty, he was waiving his right against self-incrimination and to cross-examine prosecution witnesses.  *See* Amended Petition (Dkt. No. 4) at Ground Three; Supporting Mem. (Dkt. No. 2) at 46-58; *see also* March, 1998 Article 440 Motion at ¶¶ 34-39.

i.     Clearly Established Supreme Court Precedent

I consider this claim in light of the Supreme Court's directive that, in evaluating the propriety of a guilty plea, federal courts must ascertain whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.  *Boykin*, 395 U.S. at 242-43, 89 S.Ct. at 1712; *Alford*, 400 U.S. at 31, 91 S.Ct. at 164; *Lockhart*, 474 U.S. at 56, 106 S.Ct. at 369; *Parke*, 506 U.S. at 29, 113 S.Ct. at 522.

ii.     Contrary To, or Unreasonable Application of, Supreme Court Precedent

White's argument that his guilty plea is unenforceable because Judge Nicandri failed to ensure that White was aware that his guilty plea resulted in a waiver of his right against self-incrimination and to cross-

36

examine witnesses appears to overlook the firmly established principle that "there is no specific series of questions that a state court judge must ask in the course of a plea allocution in order to satisfy due process.  Due process requires only that the courts provide safeguards sufficient to insure the defendant what is reasonably due in the circumstances."  *Hanson v. Debois*, No. 03 CIV. 5671, 2004 WL 540267, at \*6 (S.D.N.Y. Feb. 13, 2004) (citation omitted).  Nor is there any requirement that County Court judges follow a "'uniform mandatory catechism of pleading defendants.'" *Id.*, 2004 WL 540267, at \*7 (quoting *People v. Nixon*, 21 N.Y.2d 338, 353, 287 N.Y.S.2d 659, 695 (1967)).

In this instance, prior to accepting White's guilty plea, Judge Nicandri determined that White 1) understood the nature of the charge against him; 2) had not been threatened, nor induced by promises, to plead guilty; 3) was aware that he had a right to a public jury trial; 4) understood he was waiving "other rights" he would enjoy if he proceeded to trial on the charge; 5) knew that his guilty plea would have the same legal effect as a conviction on the charge by a jury; 6) was informed of the specific acts with which he was charged that constituted the offense; 7) was not under the influence of alcohol, medications or drugs at the time of his plea; and 8)

understood the range of sentences to which he was subject by his guilty plea. *See* Plea Tr. at 5-7. As I have already noted, the record before this court, including the transcript of White's plea allocution, establishes that his guilty plea was properly accepted by the trial court. The mere fact that Judge Nicandri failed specifically to advise White that by pleading guilty, he was waiving his right to confront his accusers and his right against self-incrimination, did not render his otherwise valid plea invalid. *E.g. Hanson*, 2004 WL 540267, at *7-9 (rejecting recommendation of Magistrate Judge that plea was invalid because state trial judge failed to advise defendant during plea colloquy that by pleading guilty, defendant was waiving, *inter alia*, "his privilege against compulsory self-incrimination, his right to a trial by jury, and his right to confront his accusers"). I therefore conclude that Judge Nicandri's decision denying this aspect of White's March, 1998 Article 440 motion is neither contrary to, nor represents an unreasonable application of, the Supreme Court precedent noted above.

    4.   <u>Ground Four</u>

    In the fourth ground of his petition, White argues that the prosecution engaged in misconduct because the District Attorney "remained silent when petitioner answered 'No' when asked by the court if any promises

induced [the] guilty plea." Amended Petition (Dkt. No. 4) at Ground Four.

Petitioner argues that the evidentiary hearing established that the District

Attorney was aware of an agreement between the court and Attorney Lekki

regarding the sentence White was to receive, and that therefore the

prosecution improperly failed to note this fact on the record at the time

White pleaded guilty.[19]  *Id.*

### i.   Clearly Established Supreme Court Precedent

A criminal defendant's fundamental right to a fair trial is mandated by

the Due Process Clause of the United States Constitution.  *Albright v.*

*Oliver*, 510 U.S. 266, 273 n.6, 114 S.Ct. 807, 813 n.6 (1994) (citing *United*

*States v. Agurs*, 427 U.S. 97, 107, 96 S.Ct. 2392, 2399 (1976)).  Quite

obviously, prosecutorial misconduct is a matter which brings into play this

constitutional mandate of a fair trial.  The parties have not cited, however,

nor have I located, any Supreme Court precedent which specifically

addresses the issue of prosecutorial misconduct in the context of a plea

colloquy.

Since no clearly established Supreme Court precedent appears to

exist which outlines the contours of a claim alleging prosecutorial

---

[19]      These claims were first raised by White in the context of his March,
1999 Article 440 motion.  *See* March, 1999 Article 440 Motion at ¶¶ 29, 31.

misconduct during the course of a plea allocution, White cannot establish

that Judge Nicandri's decision denying this aspect of White's March, 1999

Article 440 motion is contrary to, or an unreasonable application, clearly

established Supreme Court precedent.  *See Smith v. Barkley*, No. 9:99-

CV-0257, 2004 WL 437470, *6 (N.D.N.Y. Feb. 14, 2004) (Sharpe, J.)

(citation omitted).  Accordingly, I could recommend that this ground be

denied on this basis alone.

The Supreme Court has noted, however, that where there has been

a trial, federal habeas relief should be granted due to prosecutorial

misconduct if the misconduct "'so infected the trial with unfairness as to

make the resulting conviction a denial of due process.'"  *Darden v.*

*Wainwright*, 477 U.S. 168, 181, 106 S.Ct. 2464, 2471 (1986) (quoting

*Donnelly v. DeChristoforo*, 416 U.S. 637, 643, 94 S.Ct. 1868, 1871 (1974)).

In considering such a claim, courts are to focus on "the fairness of the trial,

not the culpability of the prosecutor."  *Smith v. Phillips*, 455 U.S. 209, 219,

102 S.Ct. 940, 947 (1982).  From this Supreme Court precedent, principles

could be extrapolated for use in this matter that a petitioner is entitled to

habeas relief on a claim of prosecutorial misconduct where he or she is

establishes that the prosecutor's misconduct during the underlying state

court proceedings, whether involving a trial or guilty plea, rendered the petitioner's resulting conviction a denial of due process. *Donnelly*, 416 U.S. at 643, 94 S.Ct. at 1871; *Darden*, 477 U.S. at 181, 106 S.Ct. at 2471. Since the law applicable to traditional claims alleging prosecutorial misconduct is clearly established, *see Davis v. Keane*, 97 CIV. 8328, 2000 WL 1041454, at *7-8 (S.D.N.Y. July 28, 2000) (citing *United States v. Young*, 470 U.S. 1, 11, 105 S.Ct. 1038, 1044 (1985) and *Donnelly*, 416 U.S. at 642-43, 94 S.Ct. 1868, 1871)); *see also Flores v. Keane*, 211 F.Supp.2d 426, 438 (S.D.N.Y. 2001), I alternatively consider whether Judge Nicandri's denial of White's prosecutorial misconduct claim is contrary to, or represents an unreasonable application of, the above-referenced Supreme Court precedent.

> ii.   Contrary To, or Unreasonable Application of, Supreme Court Precedent

In denying White's March, 1999 Article 440 motion, Judge Nicandri cited CPL § 440.10(3)(b), (c). *See* April, 1999 Decision at (unnumbered) p. 2. The denial of a claim pursuant to CPL § 440.10(3)(b) is one that is based upon the merits.[20]   *E.g.*, *Taylor v. Kuhlmann*, 36 F.Supp.2d 534, 546

---

[20]      Respondent does not argue that Judge Nicandri's alternative finding, that the March, 1999 Article 440 motion should be denied under CPL § 440.10(3)(c), which constitutes a procedural denial of a claim (*see Hines v. Elmira*

(E.D.N.Y. 1999) (citing analogous provision under CPL § 440.10(2)(a))
(other citations and footnote omitted).  I therefore consider whether Judge
Nicandri's conclusion that this aspect of White's March, 1999 Article 440
motion was without merit is contrary to, or represents an unreasonable
application of, *Donnelly* and *Darden*.

Petitioner appears to be claiming that the prosecutor was required to
object to White's responses to two different questions posed to him during
the course of the plea colloquy, including 1) Judge Nicandri's inquiry
whether White's decision to plead guilty was induced by any promise (Plea
Tr. at 5); and 2) the trial court's question to White if any promises had been
made to him regarding what the sentence would be if he pleaded guilty
(Plea Tr. at 6).  *See* Supporting Mem. (Dkt. No. 2) at 66-72.

With respect to the first of these two questions, as I have previously
noted, the only "promise" that is substantiated by the state court record

_____

*Correctional Facility*, 02CIV.1057, 2003 WL 21729836, at *4 (S.D.N.Y. July 25,
2003)), precludes this court from considering the merits of this aspect of White's
petition.  I therefore find that this potential hurdle that would otherwise prevent
petitioner from pursuing this portion of his amended petition has been waived.  *See
Trest v. Cain*, 522 U.S. 87, 89, 118 S.Ct. 478, 480 (1997) ("procedural default is
normally a 'defense' that the State is 'obligated to raise' and 'preserv[e]' if it is not to
'lose the right to assert the defense thereafter'") (quoting *Gray v. Netherland*, 518
U.S. 152, 166, 116 S.Ct. 2074, 2082) (1996)) (other citation omitted); *Cf. Acosta v.
Artuz*, 221 F.3d 117, 122 (2d Cir. 2000) (noting that, in the context of petitions
brought pursuant to § 2254, courts should generally "not raise *sua sponte*
nonjurisdictional defenses not raised by the parties").

concerns Judge Nicandri's statement that White would not receive the

maximum term of imprisonment if he pleaded guilty.  *See* Evidentiary Tr. at

19; *see also* May, 1998 Decision at 2.  Because White was in fact

sentenced to less than the authorized maximum prison term, even

assuming, *arguendo*, that the prosecution should have noted the

agreement regarding the maximum length of White's sentence on the

record, White has failed to demonstrate that he was in any way prejudiced

by this claimed misconduct on the part of the prosecution – a deficiency

which precludes him from succeeding on this claim.  *See Lebron v.*

*Girdich*, No. 03 CIV. 2765, 2003 WL 22888809, at *3 (S.D.N.Y. Dec. 5,

2003) ("A prosecutor's misconduct only amounts to a constitutional

violation if it results in actual prejudice" to the petitioner) (citing *Blissett v.*

*LeFevre*, 924 F.2d 434 (2d Cir.), *cert. denied*, 502 U.S. 852, 112 S.Ct. 158

(1991)).

Turning to Judge Nicandri's question regarding whether any

promises had been made to White regarding what sentence would be

imposed on petitioner, I have already concluded that petitioner has not

established that he was promised a sentence of fifteen years to life

43

imprisonment.[21]  Since the evidence demonstrates that White was not

promised what the sentence *would be* if petitioner pleaded guilty, but

rather, at most, only that he would not receive the maximum authorized

punishment of imprisonment for twenty five years to life, he failed to

demonstrate that the prosecution engaged in misconduct by refraining from

clarifying the record as to that fact at his plea colloquy.  I therefore

conclude that petitioner has not demonstrated that the denial of this claim

is either contrary to, or represents an unreasonable application of, relevant

Supreme Court precedent.

     5.   <u>Ground Five</u>

     In his fifth ground, White claims that he was denied his constitutional

right to due process due to judicial misconduct.  Specifically, he claims that

because in his May, 1998 decision Judge Nicandri acknowledged his

awareness of an agreement that White would not receive the maximum

sentence of imprisonment, the trial judge improperly permitted White to

provide false answers to certain of the questions posed to him during the

---

[21]    Judge Nicandri specifically found that "no prosecutor ... made any representation to the defendant about a guaranteed sentence of fifteen years to life" imprisonment.  *See* Evidentiary Tr. at 44-45.  White has not rebutted this factual finding by clear and convincing evidence.  *See* 28 U.S.C. § 2254(e)(1); *Mask v. McGinnis*, 233 F.3d 132, 139 (2d Cir. 2000).

plea allocution.  *See* Amended Petition (Dkt. No. 4) at Ground Five.

i.    Clearly Established Supreme Court Precedent

To establish that a judge has engaged in misconduct sufficient to warrant redress, a party must typically demonstrate that the judge displayed "such a high degree of favoritism or antagonism as to make fair judgment impossible."  *Liteky v. United States*, 510 U.S. 540, 555, 114 S.Ct. 1147, 1157 (1994); *see also Withrow v. Larkin*, 421 U.S. 35, 47, 95 S.Ct. 1456, 1464 (1975) (to succeed on a judicial misconduct claim, a party must "overcome a presumption of honesty and integrity in those serving as adjudicators").  In reviewing a judicial misconduct claim, courts are to presume that public officials have properly discharged their official duties.  *See Bracy v. Gramley*, 520 U.S. 899, 909, 117 S.Ct. 1793, 1799 (1997) (internal quotations and citations omitted).

ii.    Contrary To, or Unreasonable Application of, Supreme
Court Precedent

The factual premise for this ground is similar to that offered by White in his claim alleging prosecutorial misconduct.  Specifically, petitioner contends that Judge Nicandri was aware that certain of petitioner's responses to the questions posed to him at the plea were untrue, and that Judge Nicandri engaged in misconduct by failing to note at the time of

45

petitioner's plea that 1) the trial court had indicated to Attorney Lekki that petitioner would be sentenced to the statutory minimum sentence required for his conviction; and 2) Judge Nicandri had promised not to sentence petitioner to the maximum term of imprisonment allowed by his conviction. *See* Supporting Mem. (Dkt. No. 2) at 73-80.

Based upon my review of the state court record and the documents filed by the parties in this action, I find that Judge Nicandri did not engage in any misconduct with respect to White. Initially, I note that Judge Nicandri specifically stated that he never "made any representation to the defendant about a guaranteed sentence of fifteen years to life" imprisonment. *See* Evidentiary Tr. at 44-45. Petitioner has not presented clear and convincing evidence rebutting this factual finding. *See* 28 U.S.C. § 2254(e)(1); *Mask*, 233 F.3d at 139.

I also find that while the record at White's plea colloquy would have been more complete had Judge Nicandri noted his intention not to sentence White to the maximum term on the record at that time, the failure of the trial judge to make a record of that fact was of no consequence. Specifically, Judge Nicandri was cognizant of his intention to sentence White to a term less than the statutory maximum, *see*, *e.g.*, May, 1998

Decision at 2, and, as noted above, Judge Nicandri sentenced petitioner in a manner consistent with his representations to counsel regarding the sentence.

To prevail on a claim based on judicial misconduct, a habeas petitioner must demonstrate that the trial judge engaged in conduct so "fundamentally unfair" that it violated the due process requirements of the United States Constitution. *See Daye v. Attorney Gen. of N.Y.*, 712 F.2d 1566, 1570-71 (2d Cir. 1983); *Salahuddin v. Strack*, No. 97-CV-5789, 1998 WL 812648, at *8 (E.D.N.Y. Aug. 12, 1998). A showing that the judge's conduct was merely "undesirable" is not sufficient.[22] *See Daye*, 712 F.2d at 1572. Petitioner has not demonstrated that he was treated unfairly, in any way, by Judge Nicandri, either during the plea allocution or at sentencing. I therefore find that petitioner has not demonstrated that the trial court's denial of White's judicial misconduct claim, *see* April, 1999 Decision at (unnumbered) p. 2, is contrary to, or unreasonable application of, relevant Supreme Court precedent. Accordingly, I recommend that White's fifth ground for relief be denied.

---

[22]   Nothing in this decision should be construed as implicating a belief on my part that Judge Nicandri acted inappropriately in connection with the prosecution against White, including his plea and sentencing.

6.     Ground Six

Petitioner next asserts that Judge Nicandri "lack[ed] the necessary objectivity" at the time of petitioner's sentencing hearing.  Amended Petition (Dkt. No. 4) at (attached) 6a.  In his supporting memorandum, White expands upon this claim, which he first asserted in his Article 440.20 Motion, by arguing that Judge Nicandri's statement at sentencing that he could not "understand how one individual can generate so much anger and frustration that it would lead to this kind of result" establishes that Judge Nicandri failed to take into account "the mitigating circumstances" that ultimately caused White to kill Castle, including, *inter alia*, White's jealousy over the relationship between Castle and Farris, taunting statements to which petitioner had been subjected by Castle prior to the killing, and White's alleged suicidal tendencies.[23]  *See* Supporting Mem. (Dkt. No. 2) at 86-87.

This claim, however, fails to acknowledge the established authority

---

[23]     In support of this claim, White refers this court to Exhibit C of his supporting memorandum.  In that exhibit, White has included, *inter alia*, copies of the memorandum of sentencing prepared on behalf of White, a letter dated June 7, 1996 written by a forensic psychologist to White's trial attorney regarding the petitioner, a June 7, 1996 affidavit of William J. Bero which discusses incidents that allegedly occurred between Farris, Castle and White just prior to the shooting, and numerous letters attesting to White's good character and work ethic.

which clearly holds that "[n]o federal constitutional issue is presented

where ... the sentence is within the range prescribed by state law." *White*

*v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992) (citing *Underwood v. Kelly*,

692 F.Supp. 146 (E.D.N.Y. 1988), *aff'd mem.*, 875 F.2d 857 (2d Cir.

1989)); *see also Jackson v. Lacy*, 74 F.Supp.2d 173, 181 (N.D.N.Y. 1999)

(McAvoy, C.J.) ("[i]t is well-settled ... that a prisoner may not challenge the

length of a sentence that does not exceed the maximum set by state law").

Since the maximum sentence for White's conviction is twenty-five years to

life imprisonment, *see Petrovich*, 229 F.3d at 385 n.1 (citations omitted),

the twenty-three year to life sentence White now challenges is clearly

within the range permitted by state law.

_____Arguably, this ground of White's petition could be construed as a

claim that the sentence imposed constitutes a violation of the Eighth

Amendment to the United States Constitution, which prohibits the

imposition of a sentence that is "grossly disproportionate to the severity of

the crime." *Rummel v. Estelle*, 445 U.S. 263, 271, 100 S.Ct. 1133, 1138

(1980).  I note, however, that "[o]utside the context of capital punishment,

successful challenges to the proportionality of particular sentences have

been exceedingly rare." *Id.*, 445 U.S. at 272, 100 S.Ct. at 1138; *see*

*Harmelin v. Michigan*, 501 U.S. 957, 995, 111 S.Ct. 2680, 2701-02 (1991)

(Eighth Amendment only forbids only sentences which are "grossly

disproportionate" to the crime).  A sentence of imprisonment which is within

the limits of a valid state statute is not cruel and unusual punishment in the

constitutional sense.  *See White*, 969 F.2d at 1383; *Lou v. Mantello*, No.

98-CV-5542, 2001 WL 1152817, at *13 (E.D.N.Y. Sept. 25, 2001).

In sentencing White, Judge Nicandri specifically noted that he had

taken into consideration the sentencing memorandum prepared on White's

behalf, as well as Bero's affidavit and the numerous letters provided to the

court by White's counsel in conjunction with the sentencing hearing.  *See*

Sentencing Tr. at 2-4.  White has not provided anything in support of his

amended petition which indicates that the sentence imposed on him for the

killing of Castle is "grossly disproportionate" to that crime.  *E.g.*, *Harmelin*,

501 U.S. at 995, 111 S.Ct. at 2701-02.  I therefore find no basis upon

which I could properly find that petitioner is entitled to habeas relief due to

the sentence he received for his crime, and accordingly recommend that

the sixth ground in the amended petition be denied.

     7.   <u>Ground Seven</u>

In his seventh and final ground, White argues that "the evidence

50

supported the need for a competency hearing," Amended Petition (Dkt. No. 4) at (attached) 6b, and that Judge Nicandri's failure to conduct such a hearing was the result of ineffective assistance, as well as misconduct on the part of both the prosecutor and Judge Nicandri.  *See* Supporting Mem. (Dkt. No. 2) at 92.  Respondent contends that there is no record evidence to support petitioner's claim that Judge Nicandri was required to hold a competency hearing.  Respondent's Mem. (Dkt. No. 12) at (unnumbered) 20.

i.      Clearly Established Supreme Court Precedent

The test for determining whether a defendant is competent is well-settled; a defendant may not be put to trial unless he or she "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding ... [and] a rational as well as factual understanding of the proceedings against him."  *Dusky v. United States*, 362 U.S. 402, 402, 80 S.Ct. 788, 789 (1960).  The issue to be explored during a competency inquiry is whether the defendant has the ability to understand the nature of the proceedings.[24]  *See Godinez v. Moran*, 509 U.S. 389, 401

---

[24]      "[T]he criminal trial of an incompetent defendant violates due process."  *Medina v. California*, 505 U.S. 437, 453, 112 S.Ct. 2572, 2581 (1992); *Drope v. Missouri*, 420 U.S. 162, 171-72, 95 S.Ct. 896, 903- 904 (1975).

n.12, 113 S.Ct. 2680, 2687 n. 12 (citing *Drope*, 420 U.S. at 171, 95 S.Ct. at 903).  Additionally, the standard for determining whether an individual is competent to plead guilty to a crime is the same as the benchmark utilized in determining whether an individual is competent to stand trial.[25]  *See Godinez*, 509 U.S. at 397-400, 113 S. Ct. at 2685-87.

ii.     Contrary to, or Unreasonable Application of, Supreme Court Precedent

In his March, 2000 Article 440 motion, White argued that the trial court's failure to conduct a competency hearing was the result of "prosecutorial misconduct, judicial misconduct [and] ineffective assistance of counsel."  *See* March, 2000 Article 440 Motion at ¶ 34.  Judge Nicandri denied that motion on the merits.  *See* April, 2000 Decision at 1.  I must therefore determine whether "it was objectively unreasonable for the state trial court to have concluded ... that the circumstances did not present a reasonable ground for believing that [White] was incompetent."  *Harris v. Kuhlmann*, 346 F.3d 330, 355 (2d Cir. 2003) (citation omitted).

---

[25]     The *Godinez* court noted that the focus of a competency inquiry is the defendant's *ability* to understand the proceedings, while the purpose of the court's colloquy during a plea allocution is to determine whether the defendant *actually does* understand the significance and consequences of a decision to plead guilty and whether that decision is coerced.  *Godinez*, 509 U.S. at 401 n.12, 113 S. Ct. at 2687 n.12 (emphasis added) (citations omitted).

On January 12, 1996, petitioner's counsel filed a notice of intent to offer psychiatric evidence at White's trial.  However, counsel did not pursue a defense based upon White's psychiatric health, and there was no evidence presented to the state court suggesting that White was unable to understand the nature of the proceedings against him.  Additionally, White's answers to the questions posed to him both at the time of his arraignment and the entry of his guilty plea belie any claim that a competency hearing was necessary before that plea could properly be accepted by Judge Nicandri.  *See* Arraignment; Plea Tr.  A competency hearing is only required when the trial court has reason to doubt an individual's competence.  *Godinez*, 509 U.S. at 401 n.13, 113 S. Ct. at 2688 n.13 (citations omitted).  Since there was no basis upon which Judge Nicandri had reason to doubt White's competence, I cannot conclude that his failure to inquire about White's competence was the product of any misconduct on the part of White's trial counsel, the prosecution or Judge Nicandri.  To the contrary, the trial court's decision to refrain from conducting such a hearing appears to have been a reasonable determination based upon the facts available to Judge Nicandri at that time.  *E.g.*, *Harris*, 346 F.3d at 356.

53

Based upon these considerations, I find that petitioner has not established that Judge Nicandri's denial of this aspect of White's March, 2000 Article 440 motion was either objectively unreasonable or contrary to the above-referenced Supreme Court precedent. Accordingly, I recommend that this final ground in the amended petition be denied.

III.   SUMMARY AND RECOMMENDATION

In sum, I find that all of the claims raised by White in his amended petition lack merit. It is therefore hereby

RECOMMENDED, that petitioner's amended petition be DENIED and DISMISSED in its entirety.

NOTICE:  pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report-recommendation.  Any objections shall be filed with the clerk of the court. FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

54

It is further ORDERED that the Clerk of the Court serve a copy of this

report and recommendation upon the parties by regular mail.


Dated:        September 2, 2004
              Syracuse, NY

David E. Peebles
U.S. Magistrate Judge